Appeal No. 22-1825

1:21-cv-00298

---

IN THE

United States Court of Appeals

FOR THE FOURTH CIRCUIT

Laura Tartaro-McGowan,

*Plaintiff-Appellant*,

---v.---

Inova Home Health, LLC and Alternate Solutions Health Network, LLC

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**BRIEF OF PLAINTIFF-APPELLANT**

Timothy M. Belknap
Tamara L. Slater
Alan Lescht & Associates, PC
1825 K Street NW, Suite 750
Washington, DC 20006
Tel. (202) 539-9308
Fax. (202) 463-6067
timothy.belknap@leschtlaw.com
tamara.slater@leschtlaw.com
*Attorneys for Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In compliance with Federal Rule of Appellate Procedure 26.1, Appellant Laura Tartaro-McGowan makes the following disclosure stating that the following are all interested persons known to her:

1. Laura Tartaro-McGowan, appellant, who is a natural person.

2. Timothy M. Belknap, attorney for appellant, who is a natural person.

3. Tamara Slater, attorney for appellant, who is a natural person.

4. Inova Home Health, LLC, appellee, is a corporate entity based in Virginia.

5. Alternate Solutions Health Network, LLC, appellee, is a corporate entity based in Ohio.

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................ iii

**JURISDICTIONAL STATEMENT** ................................................... 1

**STATEMENT OF THE ISSUES** ...................................................... 1

**STATEMENT OF THE CASE** .......................................................... 2

**STATEMENT OF THE FACTS** ....................................................... 4

   I.  Background. ........................................................................... 4

   II.  Tartaro-McGowan becomes a Clinical Manager for Inova VNA. ............. 4

   III. IHHS enters into a joint venture with ASHN and promises not to require Tartaro-McGowan to provide direct patient care. ............................................ 5

   IV. Defendants require Tartaro-McGowan to provide direct patient care. ..................... 7

   V.  Tartaro-McGowan formally requests a reasonable accommodation. ....................... 8

   VI. Defendants terminate Tartaro-McGowan's employment. ........................................ 11

**SUMMARY OF ARGUMENT** ......................................................... 12

**ARGUMENT** ........................................................................................ 14

   I.  Legal Standard of Review ...................................................... 14

   II.  Tartaro-McGowan Was Terminated After Being Denied a Reasonable Accommodation Related to a Never Before Requested Duty. ................... 15

     A.  A Reasonable Jury Could Conclude that Direct Patient Care Field Visits Were Not an Essential Function of Tartaro-McGowan's Job as a Clinical Manager. ... 16

     B.  A Reasonable Jury Could Conclude that  Tartaro-McGowan Was Otherwise Qualified for Her Job and Able to Perform the Essential Functions of Her Job with an Accommodation. .............................................................. 30

     C.  A Reasonable Jury Could Find that Defendants Policies Applicable to All Internal Staff Do Not Constitute a Reasonable Accommodation. .................... 34

   III. Tartaro-McGowan Was Terminated Based on Her Disability and Request for Reasonable Accommodation. ....................................................... 36

     A.  A Reasonable Jury Could Conclude that Tartaro-McGowan Was Qualified for the Position and Meeting Defendants' Legitimate Expectations. ................. 37

     B.  A Reasonable Jury Could Draw an Inference of Discriminatory and/or Retaliatory Motive. ............................................................................... 39

IV. A Reasonable Jury Could Conclude that Defendants Proffered a False Reason for Terminating Tartaro-McGowan. ...............................................................41

   A. There is a Genuine Dispute Regarding Whether Defendants Honestly Believed that Tartaro-McGowan "Adamantly Refused" to Provide Direct Patient Care on a Field Visit. ...............................................................41

   B. A Reasonable Jury Could Conclude that Defendants' Shifting Explanations Are Evidence of Pretext. ...............................................................42

**CONCLUSION** ...............................................................44

**STATEMENT REGARDING ORAL ARGUMENT** ...............................................................45

**CERTIFICATE OF COMPLIANCE** ...............................................................51

**CERTIFICATE OF SERVICE** ...............................................................52

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................15, 21

*Ballinger v. N.C. Agric. Extension Serv.*,
    815 F. 2d 1001 (4th Cir. 1987) ................................................26

*Benson v. Northwest Airlines, Inc.*,
    62 F.3d 1108 (8th Cir. 1995) ..................................................16

*Boyer-Liberto v. Fontainebleau Corp.*,
    786 F.3d 264 (4th Cir. 2015) ..................................................38

*Brown v. Martin Marietta Materials, Inc,*
    440 F.Supp.3d 503 (M.D.N.C. 2020) ......................................34

*Brown v. Smith*,
    827 F.3d 609 (7th Cir. 2016) ...........................................18, 19

*Carter v. Tisch*,
    822 F.2d 465 (4th Cir. 1987) ..................................................31

*Cathey v. Wake Forest Uni. Baptist Med. Center*,
    90 F.Supp.3d 493 (M.D. N.C. 2015) ......................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................15

*Cf. Elledge v. Lowe's Home Centers, LLC*,
    979 F.3d 1004 (4th Cir. 2020) ................................................31

*E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP*,

616 Fed.Appx 588 (4th Cir. 2015) ...........................................................34

*EEOC v. Sears Roebuck & Company*,
    243 F.3d 846 (4th Cir. 2001) ...........................................................43

*Jacobs v. N.C. Admin. Off. of the Cts.*,
    780 F.3d 562 (4th Cir. 2015) .....................................................29, 37

*Jacobson v. Barnhart*,
    WMN-05-1381, 2006 WL 8456562 (D. Md. Dec. 14, 2006) ................................20

*Laird v. Fairfax County, Va.*,
    978 F.3d 887 (4th Cir. 2020) .....................................................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...............................................................15, 23

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)..............................................37

*Meyer v. DyncCorp Int., LLC*,
    GJH-19-3412, 2020 WL 5513436 (D. Md. Sept. 14, 2020)....................................18

*Monette v. EDS Corp.*,
    90 F.3d 1173 (6th Cir. 1996) ...........................................................16

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)...............................................................26

*Reyazuddin v. Montgomery County, Md.*
    789 F.3d 407 (4th Cir. 2015) ...........................................................17

*Roe v. Doe*,
    28 F.3d 404 (4th Cir. 1994) .....................................................14, 15

*Samson v. Federal Exp. Corp.*,
    746 F.3d 1196 (11th Cir. 2014) ...............................................................18

*Sempowich v. Tactile Systems Tech., Inc.*,
    19 F.4th 643 (4th Cir. 2021) ...................................................................39

*Shin v. Univ. of Maryland Med. Sys. Corp.*,
    369 F. App'x 472 (4th Cir. 2010) .............................................................31

*Slaby v. Holder*,
    No. 112CV1235AJTIDD, 2013 WL 12147698 (E.D. Va. July 24, 2013) .............36

*Southeastern Comm. College v. Davis*,
    442, U.S. 397 (1979)...............................................................................31

*Tyndall v. Nat. Educ. Centers, Inc. of Cali.*,
    32 F.3d 209 (4th Cir. 1994) .....................................................................31

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962)...............................................................................15

*Warch v. Ohio Cas. Ins. Co.*,
    435 F.3d 510 (4th Cir. 2006) ...................................................................39

*Ward v. Mass. Health Research Inst., Inc.*,
    209 F.3d 29 (1st Cir. 2000)......................................................................16

*White v. York Intern. Corp.*,
    45 F.3d 357 (10th Cir. 1995) ...................................................................16

*Wilson v. Dollar General Corp.*,
    717 F.3d 337 (4th Cir. 2013) ...................................................................16

*Wilson v. Holyfield*,
    227 Va. 184, 313 S.E.2d 396 (1984) .........................................................24

**STATUTES**

42 U.S.C. § 12111(9)(B) ................................................................34

**RULES**

29 C.F.R. § 1630.02(n)(3)(i)-(vii) ............................................17, 35

29 C.F.R. § 1630.2 ...............................................................36

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and 28 U.S.C. § 1331.

The district court entered a Judgment on June 21, 2022. Appellant Laura Tartaro-McGowan filed a notice of appeal on July 20, 2022. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, because this appeal is from a final judgment of a federal district court that dismissed all claims against all parties.

## STATEMENT OF THE ISSUES

I.    Whether the district court erred in granting summary judgment by making a factual finding that direct patient care field visits was an essential function of Tartaro-McGowan's position?

II.   Whether the district court erred in granting summary judgment by making a factual finding that Defendants/Appellees engaged in the interactive process with Tartaro-McGowan, when it merely reiterated the initial conditions offered to all employees being newly asked to perform direct patient care field visits, for which Tartaro-McGowan was seeking an accommodation?

III.    Whether the district court erred in granting summary judgment by resolving a factual dispute as to whether Tartaro-McGowan's named comparators were similarly situated?

IV.    Whether the district court erred in granting summary judgment by finding that Defendants'/Appellees' shifting and inconsistent explanations for terminating Tartaro-McGowan were not evidence that their stated reasons for terminating her were pretext for disability discrimination?

V.    Whether the district court erred in granting summary judgment by incorrectly citing and weighing the factual record?

## STATEMENT OF THE CASE

Tartaro-McGowan is a Registered Nurse who worked for Inova Health for nearly 40 years through three organizational iterations. JA32. She saw patients in the field for 17 of those years. She loved seeing patients. But in 2016 and 2017, she had bilateral total knee replacement surgeries and was no longer physically able to safely perform direct patient care field visits. JA34. That's when Tartaro-McGowan applied for the position of Clinical Manager. JA34. She was assured that she would be required to perform supervisory field visits only. No direct patient care field visits. And in fact, her new job description was consistent with this assertion. JA34-35.

2

For two and a half years, Tartaro-McGowan thrived in her role. She enthusiastically supervised field visits as needed, the same as other Clinical Managers. JA36. But in May 2020, Defendants notified Tartaro-McGowan that she was now required to perform direct patient care field visits. JA36-37. Tartaro-McGowan immediately notified her second-line supervisor, Kathleen Nesterick, that she was unable to safely perform direct patient care field visits due to her disability and provided a letter from her doctor. JA37. On June 24, 2020, Tartaro-McGowan was terminated for failing to perform direct patient care field visits. JA39. Approximately two months later, Defendants removed the direct patient care field visits requirement for internal staff.

Tartaro-McGowan filed her complaint on March 10, 2021 seeking to recover damages for the denial of a reasonable accommodation, disability discrimination, and retaliation related to her request for a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"), and for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). JA32.

After discovery, Defendants moved for summary judgment on November 29, 2021. JA43-78. Defendants' motion was fully briefed and submitted to the Court by December 20, 2021. JA672-706, JA833-849. By Order and Judgment entered on June 21, 2022, the district court granted Defendants' motion and dismissed all Tartaro-McGowan's claims. JA9-31.

3

## STATEMENT OF THE FACTS

### I.    Background.

Tartaro-McGowan is a Registered Nurse (RN, BSN). JA708. For nearly 40 years, Tartaro-McGowan served the residents of Alexandria and Fairfax, Virginia, as a nurse. JA101. Tartaro-McGowan saw patients in the field for 17 of those years. JA101. Tartaro-McGowan was employed by Inova Home Health ("Inova VNA"), within the Inova Home Healthcare System ("IHHS") for nearly 40 years. JA101.

In 2016, Tartaro-McGowan had a left total knee replacement. JA710-715. She continued to work in the field until she had a right total knee replacement in 2017. JA105, JA710-715. After her knee surgeries, Tartaro-McGowan suffered from a physical impairment (chronic arthritis), which substantially limits her major life activities of squatting, kneeling, bending her knees, and otherwise putting stress on her knees. JA717-718. As a result, Tartaro-McGowan was no longer able to safely treat patients under the variable, and often unexpected, conditions associated with field work. JA161-162, JA720-723. She made the hard decision to stop providing direct patient care in the field.

### II.    Tartaro-McGowan becomes a Clinical Manager for Inova VNA.

In order to avoid exacerbating her knee injuries, Tartaro-McGowan applied to the in-office position of Clinical Manager in July 2017. JA35, JA95. This role supported clinicians who were out in the field and would allow her to continue

supporting patients and their caregivers without jeopardizing her own health or the safety of her patients. JA105, JA222-223, JA435, JA721-722.

Tartaro-McGowan was selected as the Clinical Manager and started in that role in August 2017. JA105, JA222-223, JA435, JA721-722. Kathleen Nesterick was the Director of Clinical Operations for Inova VNA and at the time the equivalent of Tartaro-McGowan's second level supervisor. JA104-105.

### III. IHHS enters into a joint venture with ASHN and promises not to require Tartaro-McGowan to provide direct patient care.

In September 2018, IHHS entered into a joint venture with Alternate Solutions Health Network, LLC ("ASHN"). JA106. The joint venture is called Inova Home Health, LLC ("Inova"). JA106. As a result of the joint venture, all staff who wished to continue working were required to apply for a new position. *See, e.g.,* JA106 (noting Tartaro-McGowan's efforts to obtain job with Inova). Tartaro-McGowan interviewed for various positions with Inova and was selected as a Clinical Manager. JA61, JA106-107. Despite the change of company, Tartaro-McGowan and the other Clinical Manager, Virginia Vasquez, continued to perform the exact same functions for Inova as they did for Inova VNA, including but not limited to performing only supervisory field visits. JA142-144, JA566.

The Clinical Manager job description included the following "Essential Function:" "Arrives at assigned location on scheduled work day. Works according to designated hours and on-call as needed in office and field nursing

5

responsibilities." JA725-727. The Clinical Manager job description included the following "Major Area of Responsibility": "Completes field visits as needed providing direct patient care upon Administrator discretion." JA725-727. The inclusion in the Essential Functions section of the ambiguous phrase, "on-call as needed in office and field nursing responsibilities" concerned Tartaro-McGowan because of her disability. JA161-163.

After seeing the job description, Tartaro-McGowan discussed her concerns regarding her ability to perform field visits with Defendants. JA161-163. Specifically, Tartaro-McGowan discussed her concerns with Defendant's hiring representatives Jolita Humphreys (formerly Jolita Wilbanks), VP Patient Services, and Billie Ellis, Senior Manager of Patient Services and Supervising Registered Nurse. JA161-163, JA382, JA384-385, JA730-733, JA739-740. Tartaro-McGowan sought and received assurances that she would not be required to go into the field to provide direct patient care in her role as a Clinical Manager for Inova. JA161-163. Humphreys and Ellis assured Tartaro-McGowan that she would not be required to provide direct patient care, that the referenced field visits were supervisory in nature and would be otherwise infrequent. JA161-163.

Tartaro-McGowan relied on the assurances from Humphreys and Ellis regarding the physical requirements of her job as a Clinical Manager for Inova. Consistent with those assurances, the only field duties performed by Clinical

Managers – including Tartaro-McGowan – until May 2020 were supervisory in nature. JA161-163, JA124, JA142-144, JA435, JA566, JA742-758. In addition, and consistent with Humphreys' and Ellis' assurances, Tartaro-McGowan and other internal staff were trained differently from field nurses. For example, internal staff were not trained to utilize the software and hardware that were utilized by field staff. JA537, JA733-735.

**IV.    Defendants require Tartaro-McGowan to provide direct patient care.**

From September 2018 until early May 2020, Tartaro-McGowan successfully performed her job duties as a Clinical Manager for the joint venture and received positive reviews from her supervisors. JA760-766, JA768. In early May 2020, and due to the pandemic, Defendants notified their employees, including internal employees like Tartaro-McGowan, that they would now be required to provide direct patient care out in the field. JA222-223, JA771-772.

Due to Tartaro-McGowan's disability, and consistent with her efforts since her second knee replacement, she could not safely provide such care in the field. JA124, JA142-144. However, Tartaro-McGowan continued to be able to perform the Clinical Manager responsibilities that she had performed since the inception of the joint venture, and prior, including going into the field to supervise clinicians, providing service recovery, accompanying surveyors and/or delivering supplies to patients/clinicians. JA124, JA142-144.

## V.    Tartaro-McGowan formally requests a reasonable accommodation.

After receiving the May 2020 notice, Tartaro-McGowan discussed her physical limitations with Nesterick. Nesterick advised Tartaro-McGowan to submit a request for a reasonable accommodation. JA222-223. On May 13, 2020, Tartaro-McGowan requested a reasonable accommodation based on her disability. In support, she provided a letter from her physician stating the following:

> [Tartaro-McGowan] has chronic arthritic issues involving her knees which do not allow her to squat or get very low. This is often required when treating patients at home, and she is unable to do this. I would therefore respectfully request that she be employed in a different capacity which will not require her to bend her knees or otherwise put stress on her lower extremities.

JA717-718.

On May 15, 2020, Joan VanZant, Director of Human Resources, ASHN, responded to Tartaro-McGowan's request by pointing to Defendant's standard policy, which allows nurses to self-select and screen patients before accepting them, to try and avoid her restrictions, including squatting, kneeling, bending at the knees, or otherwise putting stress on her knees. JA720-721. Defendant's proposal was not actually an accommodation because all internal office staff who were then being asked to go into the field were allowed to self-select and screen patients prior to agreeing to go out in the field. JA229, JA768, JA440-442 ("everyone in the office was afforded the opportunity to self-select patients"); JA569, JA775.

More importantly, Defendants' proposed solution was inadequate and unrealistic. If something were to happen during the appointment to the patient that required bending, squatting or kneeling, Tartaro-McGowan, would be unable to adequately respond. JA718, JA398-399 ("expect the unexpected"). For example, if the patient fell during a visit, Tartaro-McGowan would be helpless to assist the patient given her disability. Such a fall, or any other similar accident, would not be considered in a pre-visit screening call. Thus, Defendants' proposal would place Tartaro-McGowan and her patients at great risk. JA718, JA398-399.

On May 27, 2020, just two weeks after she requested a reasonable accommodation, Defendants posted Tartaro-McGowan's Clinical Manager position on the internet. JA648, JA779-780.

Tartaro-McGowan discussed Defendant's policy with her physician. On May 30, 2020, Tartaro-McGowan responded to Defendants' policy, providing a new letter from her physician stating that the suggestion that Tartaro-McGowan screen patients was not a "reasonable solution," because a patient's full needs:

> can never be truly determined until she is at the home doing a proper nursing assessment. Once in the home, she would have a professional obligation to address the patient's needs and she may not be able to do that adequately because of her arthritic issues.

9

JA718, JA398-399 (Defendants' Vice President of Patient Services with years of experience performing field visits, testifying that, on a daily basis, "[i]n home care . . . clinician[s] should expect the unexpected and be prepared for that.").

Despite Tartaro-McGowan's physician's note addressing the inadequacy of Defendants' suggested solution, Defendants continued to insist that she provide direct patient care in the field. JA782-785. On June 12, 2020, Kathleen Nesterick, Inova Field Administrator, asserted for the first time since the inception of the joint venture, that "field visits [providing direct patient care] have always been part of the clinical manager description and an essential job function." JA782. However, both Tartaro-McGowan and Vasquez, the two Clinical Managers working for Inova for 1 year and 9 months after the joint venture, testified that they did not provide direct patient care as Clinical Managers. JA435, JA450, JA566, JA597. Similarly, Humphreys and Ellis explicitly told Tartaro-McGowan that she would not be required to provide direct patient care even after she was issued a new job description. JA142-144, JA566, JA717-718, JA783, JA787-789.

On June 19, 2020, Nesterick asserted that Defendants had been recruiting to hire a new Clinical Manager, not because of COVID related nursing shortages, but rather because Defendants had "reached [their] pre-COVID census," were increasing outreach, and "anticipating significant growth." JA791-792.

On June 22, 2020, Tartaro-McGowan received an email from Nesterick notifying Tartaro-McGowan that, "[i]f you decide not [sic] go into the field, then this will be considered job abandonment, and you will no longer be employed by Inova Home Health effective June 24th." JA794. On June 24, 2020, Defendant assigned Tartaro-McGowan a patient to see in the field. This patient required 2-4 layers of profore wraps for each lower extremity, which would have required Tartaro-McGowan to bend, stoop, and possibly get near to the ground in order to provide care. JA258, JA756, JA768.

Tartaro-McGowan contacted the patient to discuss his needs during her assigned visit. Tartaro-McGowan spoke with the patient's spouse, who requested that the appointment be rescheduled for another day. Tartaro-McGowan noted this request in the system pursuant to Defendants' policies and procedures. JA768. Tartaro-McGowan was also able to confirm from her call with the client that she would have needed to bend and otherwise perform physical tasks outside of her ability in order to provide proper care. Accordingly, pursuant to Defendants' screening policies, she could have declined to see this patient based to Defendants' screening policy. JA769.

## VI.    Defendants terminate Tartaro-McGowan's employment.

Despite the patient canceling the visit, thereby making it impossible to perform the assigned field visit, on June 25, 2020 Defendants notified Tartaro-

McGowan that her employment was terminated effective the same day due to alleged job abandonment. JA756, JA258. The stated reason was Tartaro-McGowan's refusal to perform **any** field visits on or before June 24, 2020. The termination notice also references Tartaro-McGowan's removal of certain items from her office as supporting this decision. JA803.

But Tartaro-McGowan did not refuse to see the referenced patient; the patient's spouse rescheduled the appointment. JA258, JA756. Defendants removed the requirement that internal staff perform field visits less than two months after firing Tartaro-McGowan. JA452, JA584, JA742-758, JA805-810.

Defendants treated two internal employees who, unlike Tartaro-McGowan, had not requested an accommodation and who had not yet made any field visits as of Tartaro-McGowan's termination, substantially more favorably. JA769. One received a verbal warning and neither was fired on June 25, 2020 after not having performed a field visit. JA742-758, JA589-590, JA459-460.

## SUMMARY OF ARGUMENT

Tartaro-McGowan sued Defendant after she was denied a reasonable accommodation and terminated because of her disability. Defendant alleged that she "adamantly refused" to perform a direct patient care field visit, yet management had assured her that this would not be a part of her job, let alone an essential function, and she had not been required to do so in her first two years in

the job. Furthermore, Tartaro-McGowan did not refuse to do any field visit; the visit Defendant accused her of cancelling was actually canceled by the patient's spouse. Thus, a reasonable jury could find that Defendant falsely claimed that Tartaro-McGowan "adamantly refused" to provide direct patient care, and conclude that it proffered this false reason to cover up its unlawful motive.

In addition, the district court erroneously weighed the evidence in finding that direct patient care was an essential function of the Clinical Manager's job given that it was not included among the several duties listed under the heading "Essential Functions" and had not been performed by Clinical Managers on a regular basis. For example, the Court, in comparing the job description, determined that language in the "Major Area of Responsibility" section was "mutually reinforcing" of duties found in the section entitled "Essential Functions" despite substantial differences in language and construction. A jury could conclude, based on the disputed material facts, that this function was not an essential function because Defendant's position on the matter changed over time, the written job description did not include such duties in the essential function section, and, with the exception of a few months, no similarly situated current or former employee has been required to perform this task. Relatedly, a jury could conclude that Tartaro-McGowan was qualified for the position and entitled to an

13

accommodation of the non-essential function if the direct patient care field visits were not an essential function of her job.

## ARGUMENT

### I.   Legal Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *Laird v. Fairfax County, Va.*, 978 F.3d 887, 892 (4th Cir. 2020); *Roe v. Doe*, 28 F.3d 404, 406–07 (4th Cir. 1994). The district court's granting of summary judgment should be reversed unless, upon review of all the pleadings, depositions, affidavits and other documents submitted by the parties, this Court concludes that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In evaluating the evidence, the Court must draw all reasonable inferences in favor of the non-moving party. Similarly, in *de novo* review, this Court must draw all reasonable inferences in favor of the appellant. *Laird*, 978 F.3d at 892; *Roe*, 28 F.3d at 406-07 (*citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party, the motion for summary judgment cannot be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Supreme Court has emphasized that the evidence presented must not be weighed by a judge before trial. *Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the

14

weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge.").

## II.   Tartaro-McGowan Was Terminated After Being Denied a Reasonable Accommodation Related to a Never Before Requested Duty.

For a reasonable jury to conclude that Defendants failed to accommodate

Tartaro-McGowan under the Americans with Disabilities Act, Tartaro-McGowan

must show that the following elements are in genuine dispute: (1) she had a

disability within the meaning of the statute; (2) Defendants had notice of her

disability; (3) she could perform the essential functions of her position with a

reasonable accommodation, and (4) Defendants refused to make such

accommodations. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir.

2013) (internal citation omitted). If there is a dispute regarding whether a function

is essential, the employer bears the burden of proof to show that it was an essential

function. *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 35 (1st Cir.

2000); *Monette v. EDS Corp.*, 90 F.3d 1173, 1182 n. 8, 1184 (6th Cir. 1996);

*Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir. 1995); *White v.*

*York Intern. Corp.*, 45 F.3d 357, 362 (10th Cir. 1995). Defendants did not contest

the first two elements on summary judgment. JA65.

After Tartaro-McGowan's second total knee replacement surgery, she was

forced to make an extremely difficult decision about the future of her job. Her

mobility would be restricted, and she could not continue to provide direct patient

15

care as she had for the previous 17 years. She took the necessary steps to ensure the safety of herself and her patients. There were no issues until Inova tried to alter Tartaro-McGowan's job to include regular direct patient care field visits. As a result, Tartaro-McGowan sought an accommodation to Inova's new requirements. Rather than work with her to find a way to best utilize Tartaro-McGowan's wealth of experience and passion for patient care, Inova elected to stonewall the request and push Tartaro-McGowan to perform tasks she was physically unable to perform.

The Court granted summary judgment, finding that direct patient field visits were an essential function of Tartaro-McGowan's job, that Tartaro-McGowan's inability to perform the task meant she could not perform her job, even if accommodated, and that Defendants were not obligated to provide Tartaro-McGowan's requested accommodation. All three holdings rely on the Court's erroneous factual determination that direct patient care field visits were an essential function of Tartaro-McGowan's job.

### A. A Reasonable Jury Could Conclude that Direct Patient Care Field Visits Were Not an Essential Function of Tartaro-McGowan's Job as a Clinical Manager.

Because Tartaro-McGowan has put forth evidence creating a genuine dispute regarding whether direct patient care field duties were an essential function of her job as a Clinical Manager, the district court erred in factually concluding

that they were. An analysis of the factors set forth in 29 C.F.R. § 1630.02(n)(3)(i)-(vii) demonstrates that there is sufficient evidence for a reasonable jury to conclude that direct field duties were not an essential function of Tartaro-McGowan's job. *Reyazuddin v. Montgomery County, Md.* 789 F.3d 407, 415 (4th Cir. 2015) (analyzing relevant factors and concluding that duties at issue were not essential). When viewed in the light most favorable to Tartaro-McGowan, a reasonable jury could conclude that each of the factors supports a finding that direct patient care field visits were not an essential function of Tartaro-McGowan's job as Clinical Manager.

Factor 1: The employer's judgment as to which functions are essential

The district court accepted Defendants' bare assertion that direct patient care field visits had always been an essential function despite evidence to the contrary. However, the employer's judgment is not conclusive. *Samson v. Federal Exp. Corp.*, 746 F.3d 1196, 1201 (11th Cir. 2014). Further, Tartaro-McGowan offered substantial evidence calling Defendants' current interpretation into question. Tartaro-McGowan offered four examples of such evidence.

First, Defendants' witness testified that direct patient care field visits were not performed by the Clinical Managers. *Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016); *Meyer v. DyncCorp Int., LLC*, GJH-19-3412, 2020 WL 5513436, at *6 (D. Md. Sept. 14, 2020) (*citing* 29 C.F.R. § 1630.2(n)(3)(i)) (finding that prior

17

inconsistent statements of management officials contradicted current litigated position). Virginia Vasquez, the second clinical manager hired by Defendants at the same time as Tartaro-McGowan, testified that direct patient care field visits were not an essential function of the Clinical Manager position. JA566-569 (noting that job included supervisory field visits only). In fact, direct patient care field visits were not a duty of the position at all. *See, e.g.,* JA577-578 (noting that Vasquez was refused training on software and equipment used by field nurses because it was not an essential function of the Clinical Manager job). Vasquez' statement, standing alone, raises a dispute of material fact as to whether field visits were an essential function of Tartaro-McGowan's job.

In *Brown*, the court found that a jury's determination that a job function was not essential was appropriate, based in part on evidence that suggested the employer did not believe the function was essential. *Brown*, 827 F.3d at 614. Specifically, the *Brown* court identified testimony from the employee's supervisor noting that the function was a not a key responsibility. *Id*. Similar to *Brown*, in conversations with Defendants' hiring officials prior to accepting the job as a Clinical Manager, Defendants Jolita Humphreys and Billie Ellis assured Tartaro-McGowan that her duties as a Clinical Manager in the field were supervisory in nature and would be few and far between. JA161-163.

Second, no internal staff actually performed direct patient care field visits prior to May 2020. Defendants do not dispute this. While their current judgment is that direct patient care field visits are an essential function, the prior practice of Clinical Managers does not support that contention. *See Cathey v. Wake Forest Uni. Baptist Med. Center*, 90 F.Supp.3d 493, 506 (M.D. N.C. 2015) (*citing* 29 C.F.R. § 1630, App. §1630.2(n)) (holding that the timing of changes to job duties is probative of whether they are essential in nature); *Jacobson v. Barnhart*, WMN-05-1381, 2006 WL 8456562, at *4 (D. Md. Dec. 14, 2006) (holding that prior actions inconsistent with current litigated position are probative of employer's judgment). And third, Defendants reversed its policy just two months after firing Tartaro-McGowan. Defendants reverted their policy regarding Clinical Managers, and other internal staff, performing such visits. The brief time period in which Defendant's imposed this new duty, the fact that it was not a duty for years before May 2020, and the fact that it was retracted just months later bely its litigated position that this functions were "essential" to the role of a Clinical Manager.

Finally, Defendants' witnesses were unable to articulate any rationale or specific support for their short-lived position that direct care field visits were essential to the Clinical Manager job, merely repeating over and over again that it was "in the job description." JA442, JA516-518 ("Well, it's identified in the position description as an essential function, that's one determining factor in terms

19

of whether or not it's an essential function."). As discussed more under Factor 2, below, their conclusory assertion involves another disputed material fact, so this is circuitous logic at best

Tartaro-McGowan has provided sufficient evidence from which a reasonable jury could find that Defendants did not consider direct patient care field visits an essential function of the Clinical Manager position due to the Defendants' evolving interpretation of what is essential for a Clinical Manager to do, the relatively brief period of time Defendant's allegedly considered it "essential" over Tartaro-McGowan's years of service, it's almost immediate retraction after imposing the alleged duty, and its inability to articulate any support for its designation of the duty as essential other that it being listed in the position description. Accordingly, the district court erred in deciding this factor in favor of Defendants, and this Court should remand to allow for a jury to weigh the evidence.

Factor 2: Written job descriptions prepared before advertising or interviewing applicants for the job

The written job description for the Clinical Manager position differentiates between essential duties and other duties. The job description delineates the Essential Functions under a heading by the same name. Importantly, there is no reference in the Essential Functions section to direct patient care field visits but there is reference to such visits in another section, the Major Areas of Responsibility ("MAR"). Despite Defendants' explicit differentiation between

essential functions and other duties, and their failure to include direct patient care field visits among the delineated Essential Functions, the district court held, as a matter of law, that the language in the position description required a finding that direct patient care field visits were an essential duty. In doing so, the district court improperly weighed the evidence that the written description did not list the function as an essential one against other language throughout the job description, which it believed was similar and otherwise "mutually reinforcing." *See Liberty Lobby*, 477 U.S. at 255. In the end, the Clinical Manager job description in effect at the time that Tartaro-McGowan was hired and when she was terminated in June 2020 indicates that direct patient care was <u>not</u> among the seven delineated essential functions.

The 3-page job description includes five subheadings: Summary, Qualifications & Attributes, Major Areas of Responsibility, Essential Functions, and Health Qualifications. JA725-727. Defendants point to one of 23 bullet points under MAR and one of seven bullet points under "Essential Function" in support of their assertion that direct patient care field visits were an essential function:

- <u>MAR</u> - "Completes field visits as needed providing direct patient care upon Administrator discretion." JA726.

- <u>Essential Functions</u> - "Arrives at assigned location on scheduled work day. Works according to designated hours and on-call as needed in office and **field nursing responsibilities**." JA726. (emphasis added).

21

The only mention of "direct patient care" in the job description is under MAR. It is explicitly not listed as an essential function of the Clinical Manager's job. JA725-727.

The difference in language and structure is important in this case. The Essential Function bullet point that the district court relied upon simply states "field nursing responsibilities." The record extensively demonstrates that field visits sometimes refer to supervisory field visits. *See, e.g.*, JA436, JA450-451, JA566-567, JA397-398. No other witnesses referred to direct patient care field visits as "field nursing." When reading the two-bullet points side-by-side, a reasonable jury could conclude that "providing direct patient care" was specifically included in a non-essential function list because providing "field nursing responsibilities," referred to supervisory field visits, which witnesses testified was its meaning. Tartaro-McGowan agrees that supervisory field visits were an essential function of the Clinical Manager job, and a function she performed as needed and without complaint. JA124-127, JA142-144, JA147-149, JA162-163, JA172. However, direct patient care visits were not an essential function, and she never performed them as Clinical Manager. JA143-144 (Tartaro-McGowan testifying that she had not performed direct patient field visits as a clinical manager); *see also* JA566-568 (Vasquez testifying that she only performed supervisory field visits as a Clinical Manager).

The district court drew a different inference from the evidence – one that was in Defendant's favor. The court concluded that the MAR reinforced the Essential Functions. This was error for at least three reasons. First and most importantly, the conclusion requires an inference in the Defendants' favor – which is not allowed at the summary judgment stage. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Second, it is not logical. The drafter of the description created two different headings, which would make no sense at all unless there was some difference. If the MAR were just additional essential functions, the drafter would have included the items listed in the MAR in that section. It did not, and the district court's attempt to merge the two sections should not be allowed. *See Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 (1984) (no word or provision can be rendered meaningless when a reasonable interpretation exists that is consistent with all parts of the document).

Finally, the job description in fact includes some duplicative items. For example, the MAR includes "[m]aintains active RN license in Virginia" and the Essential Functions section includes "[c]urrent applicable license as an RN." JA725-727. Contrast this with other items that do not appear on both lists, e.g., MAR includes "[c]onsistently demonstrates core values and maintains a professional appearance as a representative of the company" while there is no corollary in the Essential Function section. Defendants were clearly aware that it

needed to include certain items as essential functions while delegating other functions as non-essential responsibilities. A reasonable jury could determine, after reviewing the job description and comparing these two sections, that essential functions are those listed under the heading Essential Functions, and that Defendants meant what it said when it excluded direct patient care from the Essential Function section.

> Factor 3: The amount of time spent on the job performing the function

The district court correctly determined that this factor supports Tartaro-McGowan's interpretation of her job duties. There was no dispute that Clinical Managers, like Tartaro-McGowan, did not perform direct patient care field visits prior to May 2020. JA18; *see also* JA741-756. Accordingly, the district court correctly ruled regarding Factor 3.

> Factor 4: The consequences of not requiring the incumbent to perform the function

The district court erroneously determined that this factor favored Defendants' contention that direct patient care in the field was an essential function for the supervisor. The court adopted Defendants' argument that the pandemic created a staffing shortage of field nurses. In doing so, the district court once again resolved a disputed issue in the Defendants' favor despite Tartaro-McGowan's evidence to the contrary. For example, Nesterick did not keep track of how many direct patient care field visits were being performed, despite alleged difficulty in

finding field clinicians. *See* JA444. Similarly, the then-current staff of nurses were not performing even the minimum required number of field visits, undermining the claim of a nursing shortage. JA584, JA742-758 (Nesterick and other members of the internal staff did not come close to the 6-direct patient care field visits requested of them). In addition, at least one employee *requesting* to go in the field, Agwu, was never sent into the field. JA812-813 (email from Agwu: "I wanted to check in to see if the training is still going on for those of us that want to be helping in the field."); JA461-462 (Nesterick claiming does not remember Agwu asking to help with such a supposedly urgent need).

In the end, it is hard to see how terminating a long-term, successful employee, with decades of experience, would somehow alleviate staffing shortages that caused problems for Defendants for a period of less than three months. JA454 (No one was hired to replace Tartaro-McGowan). In any event, a reasonable jury, weighing the evidence could decide that Defendants overstated or fabricated the alleged consequences after the fact to justify terminating Tartaro-McGowan. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) (courts considering a motion for summary judgment are required to disregard evidence that the jury is not required to believe, e.g., self-interested testimony by decisionmakers regarding the reasons for the adverse action); *see also Ballinger v. N.C. Agric. Extension Serv.*, 815 F. 2d 1001, 1005 (4th Cir. 1987) ("[S]ince

summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of a claim or defense, courts must take special care... because motive often is the critical issue in employment discrimination cases").

Finally, on June 18, 2020 – before Tartaro-McGowan was terminated – she was able to determine that the number of patients waiting to be seen had "decreased by a substantial amount" since April 2020. JA788. Defendants have not presented any evidence that as of June 24, 2020, there was an urgent need for additional field visits. And there is evidence that shortly thereafter, the requirement was eliminated. JA452, JA584, JA742-758. Accordingly, Tartaro-McGowan has offered sufficient evidence to raise a jury question and this Court should reverse the district court's decision and remand for further proceedings.

Factor 5: The terms of a collective bargaining agreement

This factor is not applicable.

Factor 6: The work experience of past incumbents in the job

The district court erred in finding that this factor was a draw. The record is clear that direct patient care field visits were not performed by Clinical Managers prior May 2020. JA566, JA597, JA435, JA450. Despite acknowledging this, the district court points to the fact that Defendants later sought to require internal staff, including Clinical Managers, to perform direct patient care field visits. In support of this, the district notes that internal staff were provided annual training and that,

during a few months between May and August 2020, some internal staff did in fact

perform such visits. However, there is sufficient evidence in the record to raise a

material question of fact regarding these assertions.

First, Tartaro-McGowan did not receive the training required for individuals

who are performing direct patient care field visits. Billie Ellis, the director of

transformation who was responsible for training employees in their new roles after

the merger, testified unequivocally that Tartaro-McGowan did not receive the

training for field visits that field staff received. JA731-733.

In any event, the district court's reliance on training and certifications in

general as support for its determination misses the mark. To begin, as discussed

above, Defendants did not require at least three of its internal nurses, who were

also trained on the same competencies, to perform direct patient care field visits.

JA266-267.  Second, at least one nurse requested training to work in the field but

was not allowed.  If annual competencies and training were the issue, then there

would be no reason to exclude these nurses, at least based on training.

While Defendants argue that the requirement that Tartaro-McGowan

maintain "competencies" in field nursing meant that "the clinical manager position

[was never] truly just an office job," Tartaro-McGowan never claimed that the

Clinical Manager position was "just an office job." JA67. Tartaro-McGowan did

have the certifications and medical knowledge to perform field visits. JA96-97,

JA190-192, JA536-537. And both parties agree that supervisory field duties were part of the Clinical Manager's role, but not direct patient care on field visits. A competent Clinical Manager must maintain her medical knowledge and skills to adequately supervise a field nurse.[1]

Second, and related, the internal staff, including Clinical Managers, support the field staff, and to do so, they must stay current on appropriate practices and procedures. Before May 2020, the internal staff were never required, or even asked, to provide direct patient care field visits. Further, there was never any indication that the training was being provided to allow for such visits. While Defendants now argue that this training was provided in part to allow for direct patient field visits, a reasonable jury, based on all the evidence, including the fact that the training occurred during periods when internal staff did not perform field visits, could conclude that past employees experience did not involve such duties.

Third, while one Clinical Manager performed some direct patient care field visits after May 2020, she performed only 15 such visits before the requirement was removed, constituting a tiny portion of her duties. JA755 (chart showing field

---

[1] On one occasion when Tartaro-McGowan was performing a supervisory field visit, she needed to step in and draw a patient's blood because the nurse being supervised was unable to do so unassisted. JA124-127. She performed the exact function of a supervisor. This example illustrates why supervisors – not just field nurses – must maintain their technical skills. JA99, JA190.

visits performed by Deidra Whitherspoon, the other Clinical Manager in May 2020); *See, e.g., Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580 (4th Cir. 2015) (finding that working behind the front counter was not an essential function of a deputy clerk's job because fewer than 15% of the office's deputy clerks worked behind the front counter, and some deputy clerks never performed this task). By comparison, Tartaro-McGowan and other Clinical Managers performed *supervisory* field visits – which was listed as an Essential Function of the job – throughout their time as Clinical Managers. JA124-127, JA142-144, JA147-149, JA162-163, JA172, JA566, JA597, JA435, JA450.

Finally, while it is true that some internal staff, including Clinical Managers, did perform direct patient care field visits after May 2020, it is also undisputed that this only occurred for a few months at the onset of the pandemic, ending in approximately August 2020. After that, internal staff did not perform this function. Again, a reasonable jury could conclude that, given the short duration of the practice, that past employees experience did not involve direct patient care filed visits.

Factor 7: The current work experience of incumbents in similar jobs

Finally, the district court erred in finding that the current work experience of incumbents in similar roles supported Defendants' position. In arriving at this conclusion, the district court relied on the same facts noted in Factor 6. However,

the record is clear that the Clinical Managers are not currently required to perform direct patient care field visits (now and at the time of the summary judgment briefing and decision). JA452, JA584, JA742-758. The requirement ended shortly after Tartaro-McGowan was terminated. JA452, JA584, JA742-758. Accordingly, there should be no dispute that this factor supports Tartaro-McGowan's interpretation. A reasonable jury, based on the above, would be almost compelled to arrive at the same conclusion. Accordingly, the district court's decision must be reversed, and the case remanded for further proceedings.

**B.    A Reasonable Jury Could Conclude that  Tartaro-McGowan Was Otherwise Qualified for Her Job and Able to Perform the Essential Functions of Her Job with an Accommodation.**

Upon erroneously deciding that direct patient care field visits were an essential function, the court erroneously decided the remainder of the issues in favor of Defendants, including whether Tartaro-McGowan was qualified for the job at all, whether she should perform the essential functions of her job with an accommodation, and whether her suggested accommodation was reasonable under the circumstances. If this Court finds that direct patient care field visits were not an essential function of Tartaro-McGowan's job, then the district court's reasoning supporting these other holdings falls away. *Cf. Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1010-11 (4th Cir. 2020); *Shin v. Univ. of Maryland Med. Sys.*

30

*Corp.*, 369 F. App'x 472, 482-83 (4th Cir. 2010) (*quoting Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir. 1987)).

To determine whether an individual is qualified, this Court must decide two things. First, whether the employee could perform the essential functions of the job at issue, and second, if not, whether the employee could perform the essential functions with a reasonable accommodation. *Tyndall v. Nat. Educ. Centers, Inc. of Cali.*, 32 F.3d 209, 212-213 (4th Cir. 1994) (*citing Southeastern Comm. College v. Davis*, 442, U.S. 397, 406 (1979)) (internal quotes omitted). It is undisputed that Tartaro-McGowan performed the duties of her position for almost two years, receiving positive evaluations and without any recorded issues. JA760-766, JA768. Other than Defendants objection to her qualifications related to her ability to perform direct patient care field visits, the record is devoid of any alleged issues or concerns with Tartaro-McGowan's qualifications. Accordingly, Defendants only real concern about Tartaro-McGowan's qualifications related to her inability to perform direct care patient field visits.

As discussed, *supra*, in section II.A., direct patient care field visits were not an essential function of Tartaro-McGowan's job. Thus, her inability to perform them does not disqualify her from the position.

In addition to her positive work performance, there is evidence in the record showing the parties' perceptions regarding Tartaro-McGowan's qualifications for

31

the job when she was hired and Defendants perception of the essential functions of the job before May 2020 and since August 2020.

Tartaro-McGowan has consistently stated throughout the course of litigation that she was advised that the only field duties she would need to perform would be supervisory in nature. However, Defendants responses have varied. After Tartaro-McGowan re-applied for, re-interviewed, and was re-selected by Defendants for the Clinical Manager position in September 2018, Tartaro-McGowan discussed her concerns about the physical requirements of the job with Humphreys and Ellis, Defendants' hiring officials, to make sure that she could meet the physical requirements of the job with regard to field duties. JA161-162. Humphrey and Ellis explicitly told Tartaro-McGowan that her field duties would be supervisory in nature, and few and far between. JA162-163.

In a supplemental response to an interrogatory about these pre-hiring conversations, Defendants claimed that Ellis and Lyons "expressly informed [Tartaro-McGowan] that she would be required to perform field visits." JA820. Yet, those same officials denied ever discussing with Tartaro-McGowan whether she would be required to perform field visits. JA538 (does not recall any conversation where Tartaro-McGowan expressed concerns about going on field visits); JA738 (does not recall any conversation with Tartaro-McGowan about the Clinical Manager position in general, or field visits in particular).

The three different versions of these conversations – Tartaro-McGowan's consistent memory that she was told she would not be required to provide direct patient care on field visits; (2) Defendants' interrogatory response that Tartaro-McGowan was told she would be required to perform field visits; and (3) the testimony of Lyons and Ellis that there were no such conversations about whether Tartaro-McGowan would be required to perform field visits -- create a dispute of material fact as to whether field visits were actually required for the job. A reasonable jury could find Tartaro-McGowan's consistent testimony more credible and determine that Defendants own statements support Tartaro-McGowan's qualifications for the job.

Finally, if this Court finds that direct patient care field visits were not an essential function of Tartaro-McGowan's job, then her request to forego such visits is no longer unreasonable. *See E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP*, 616 Fed.Appx 588, 593-94 (4th Cir. 2015) (allowing for reallocation of marginal job functions as reasonable accommodation); *Brown v. Martin Marietta Materials, Inc,* 440 F.Supp.3d 503, 512 (M.D.N.C. 2020) (*citing* 42 U.S.C. § 12111(9)(B) and 29 C.F.R. § 1630.2(o) App.) (allowing for reallocation of nonessential job functions).

Based on the evidence in the record, a reasonable jury could conclude that Tartaro-McGowan was in fact qualified for the position, could perform the

essential duties of her job with or without an accommodation, and that her request to forego non-essential duties was not unreasonable.

### C. A Reasonable Jury Could Find that Defendants Policies Applicable to All Internal Staff Do Not Constitute a Reasonable Accommodation.

The district court erred in finding that Defendants did offer a reasonable accommodation. Although Defendants repeatedly claim that they offered Tartaro-McGowan an accommodation that she declined, JA782, JA784, JA439-440, JA69, in fact, no accommodation was offered. JA439; *see also* JA782-784, JA797, JA823, JA824.

A reasonable accommodation is a "Modification[] or adjustment[] to the… manner or circumstances under which the position… is customarily performed, that enable[s] a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). What Defendants did was allow Tartaro-McGowan to utilize the same screening policy available to all other internal staff. They did not offer to "modif[y] or adjust[]… the manner under which the position" was performed.

It is undisputed that every internal employee being asked to conduct direct patient care field visits was allowed to self-select or screen patients. JA229, JA768; JA440-442 ("everyone in the office was afforded the opportunity to self-select patients"); JA569, JA775. In response to Tartaro-McGowan's request for an

accommodation and her assertion that direct patient care field visits was not an essential function of her job, Defendants simply said "no" to the accommodation she requested and offered no ideas or actual accommodations.

Furthermore, evidence in the record suggests that Defendants refusal was related to unqualified opinions about her disability. Defendant determined based on its own unqualified opinion that Tartaro-McGowan's doctor's concerns were not valid. *See, e.g.*, JA433-442 (discussing qualifications of decision makers relative to Tartaro-McGowan and confirming they did not consult with Tartaro-McGowan's doctor). The statutory obligation for an employer to engage in a good faith interactive process is explicit and well established:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2 (emphasis added).

Defendants all but ignored Tartaro-McGowan's precise limitation as stated by Tartaro-McGowan and her doctor, JA717-719, instead relying on their own assessment of Tartaro-McGowan's physical condition. JA447-449. It was improper for Defendant to rely on their own assessment, especially in the face of contradictory evidence from a doctor. *Slaby v. Holder*, No. 112CV1235AJTIDD,

2013 WL 12147698, at *2 (E.D. Va. July 24, 2013) (conclusion regarding the possibility of a reasonable accommodation drawn by doctor without demonstrated expertise in the field was "entirely speculative and not based on any expertise").[2]

### III. Tartaro-McGowan Was Terminated Based on Her Disability and Request for Reasonable Accommodation.

A plaintiff may prove her retaliation and disability discrimination claims through direct and/or indirect evidence, or through circumstantial evidence via the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As a part of that review, and after making a *prima facie* case for discrimination, the burden shifts to Defendants to provide a non-discriminatory reason for its decision to terminate Tartaro-McGowan. Upon satisfying that requirement, the burden shifts back to Tartaro-McGowan to provide evidence that the stated reason was pretext for discrimination.

To state a *prima facie* claim for disability discrimination under the Americans with Disabilities Act ("ADA"), a plaintiff must prove that (1) "she has a disability, (2) that she is a qualified individual for the employment in question, and (3) that [her employer] discharged her. . . because of her disability." *Jacobs*,

---

[2] It is undisputed that Defendants' management officials lacked the knowledge and experience to make such a determination. JA499-501, JA784.

780 F.3d at 572 (internal quotation omitted). Defendants do not contest that Tartaro-McGowan has a disability. JA76.

To establish a *prima facie* case of retaliation, Tartaro-McGowan must raise an inference that (1) she engaged in protected activity; (2) Defendants took adverse action against her; and (3) the adverse action was causally connected to her protected activity. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (citations omitted). Defendants did not contest the first element. JA75.

As discussed, *supra*, Tartaro-McGowan was qualified for the role because the one task she could not do was not an essential function of her job. Further, Defendants' evident disdain for Tartaro-McGowan's medical needs, her request for an accommodation, and Defendants' failure to hold all its internal staff to the same standard raise a reasonable inference of discrimination and retaliation.

### A.    A Reasonable Jury Could Conclude that Tartaro-McGowan Was Qualified for the Position and Meeting Defendants' Legitimate Expectations.

The district court erred in finding that Tartaro-McGowan was not qualified for her position for the same reasons stated in Section II(B)-(C), *supra*. In addition, the district court erred in finding that Tartaro-McGowan was not meeting Defendants' legitimate expectations because there is a question of fact as to whether Defendant honestly and legitimately expected her to perform field visits given all the evidence addressed in more detail in Section II(A), *supra*. In fact,

neither she nor Defendants' other Clinical Managers had ever performed such visits in that capacity, prior to May 2020 or since August 2020. Thus, the duty was a marginal one, at best.

Second, there is no record evidence, with the exception of Tartaro-McGowan's inability to perform direct patient care field visits, that she was not a strong performing employee. JA760-766, JA784. *Sempowich v. Tactile Systems Tech., Inc.*, 19 F.4th 643, 650-51 (4th Cir. 2021) (*citing Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 517 (4th Cir. 2006)) (finding evidence of strong performance raised issue of fact for jury with respect to employer's legitimate expectations). If she was not meeting expectations, it could only derive from her failure to perform direct patient care field visits.

In any event, a reasonable jury could conclude, based on the above and the evidence in the record, that Defendants' expectations that Clinical Managers perform non-essential direct patient care field visits was not an honest expectation given that she had successfully performed for almost two years. Accordingly, this Court should reverse the district court's grant of summary judgment so that a jury can weigh the evidence and render a verdict as to whether Tartaro-McGowan was qualified and meeting Defendants' expectations.

**B.    A Reasonable Jury Could Draw an Inference of Discriminatory and/or Retaliatory Motive.**

There is evidence in the record that Defendants treated Tartaro-McGowan differently because she has a disability for which she requested a reasonable accommodation. First, it is undisputed that management fired Tartaro-McGowan a little over a month after she requested a reasonable accommodation for her disability. *See* JA720-722 (request for accommodation, 5/13/2020); JA803 (terminated on 6/24/2020).

Second, the responsible management official admitted that in reaching her decision to terminate Tartaro-McGowan, she focused on the fact that Tartaro-McGowan was not performing direct patient care field visits because she had sought a reasonable accommodation. JA459-461 (noting that she was not focused on field visits but rather that Tartaro-McGowan had requested not to perform them in her reasonable accommodation request). Nesterick did not discipline – or even threaten to discipline – at least two other internal staff nurses that she supervised who had not performed any direct patient care field visits as of June 24, 2020. JA459; *see also* JA742-758.

Third, Tartaro-McGowan presented evidence that Defendants did not require three remote nurses to perform field visits, despite pleas to be included. The district court found that they were not similarly situated because they worked remotely. However, due to the pandemic, all internal nurses were working remotely. The

district court also noted that one of the nurses was not trained. Yet, there is no explanation for Defendants decision not to train the one nurse, or to require the other two remote nurses, to perform direct patient care on field visits. Yet, Defendants allege that its need for nurses to perform direct patient care on field visits was so dire that it fired a Clinical Manager for not being able to transition herself to that task. Defendants' failure to utilize these resources at all, and to terminate two disabled employees because they were unable to perform this duty, suggests that its need was not as pressing as alleged. The decision not to require these three nurses to perform direct patient field visits calls into question the real motive for requiring two disabled nurses to do so.

Finally, the evidence shows Defendants did not terminate, or even discipline internal staff members Sarah McClain and Tiffani White despite not performing any field visits by June 24, 2020. Neither McLain nor White had a disability or requested an accommodation. JA742-758, JA589-590, JA459-460. The only internal staff person other than Tartaro-McGowan who was fired for not performing a field visit was Emma Marshall – who also had a disability and requested an accommodation. JA287-288, JA803. A reasonable jury could conclude that Defendants treated Tartaro-McGowan and Marshall more harshly than McClain and White based on their protected activity and disability status. This disparate treatment would support a jury conclusion that Defendants' terminated

40

Tartaro-McGowan due to her request for a reasonable accommodation and not her failure to perform a field visit by some specified date. The district court provided no explanation for disregarding this evidence.

## IV. A Reasonable Jury Could Conclude that Defendants Proffered a False Reason for Terminating Tartaro-McGowan.

### A. There is a Genuine Dispute Regarding Whether Defendants Honestly Believed that Tartaro-McGowan "Adamantly Refused" to Provide Direct Patient Care on a Field Visit.

Defendants allege that they terminated Tartaro-McGowan because she "adamantly refused" to perform any direct patient care field visits before June 25, 2020. However, there is evidence in the record that Tartaro-McGowan did not refuse, that she, in fact, attempted to comply, and that the only reason she did not perform the field visit in question is because the patient's spouse rescheduled.

At her deposition, the decisionmaker claimed that she focused on Tartaro-McGowan not performing field visits but did not similarly penalize other staff, "[b]ecause [Tartaro-McGowan] adamantly refused, the others didn't refuse." JA460.  But the evidence shows that Tartaro-McGowan was willing to comply with Defendants' directives and that she did, in fact, attempt to comply. On June 24, 2020, she contacted the first and only client assigned to her, in order discuss what the client would need. During that conversation, the patient noted a conflict with the assigned field visit date and requested the visit be rescheduled. Tartaro-McGowan noted the request in the system per standard practice. This visit was not

41

performed on the original date because the client rescheduled. Tartaro-McGowan did not refuse to do the field visit, she merely requested an accommodation. Accordingly, a reasonable jury could find that Defendants' claim that it fired Tartaro-McGowan because she "adamantly refused" to perform direct patient care on a field visit is false and a pretext for the real reason – that she had requested an accommodation.[3]

Based on this evidence, a jury could reasonably conclude that Defendants misrepresented the facts to cover up their discriminatory and/or retaliatory motive for firing Tartaro-McGowan. Accordingly, this Court should reverse the order below and remand for further proceedings.

## B.    A Reasonable Jury Could Conclude that Defendants' Shifting Explanations Are Evidence of Pretext.

A reasonable jury could also find pretext based on Defendants inconsistent and shifting explanations for Tartaro-McGowan's termination. *See EEOC v. Sears Roebuck & Company*, 243 F.3d 846, 852-853 (4th Cir. 2001) (the fact that defendant "offered different justifications at different times" for its actions is "in and of itself, probative of pretext"). The district court ignored all these varying reasons based on one email. On June 22, 2020, Nesterick sent an email issuing a

---

[3] It must be noted that after discussing the patient's needs, Tartaro-McGowan discovered that the tasks required to treat the client would have forced her to provide services that her doctor had advised against, i.e., bend, squat and/r kneel. *See* JA717-718.

"final warning" noting that Tartaro-McGowan would be terminated unless she completed field visits as directed. However, as discussed below, Tartaro-McGowan followed Defendants' directive to perform the assigned field visit but was unable to do so. Further, Defendants' email was sent prior to terminating Tartaro-McGowan and prior to any need for it to justify that decision.

Initially, Defendants provided a chart stating that she declined a field visit on June 24 and June 25, 2020, arguing that it proved that Tartaro-McGowan abandoned her job by refusing to see patients. JA756. Tartaro-McGowan was no longer employed by Defendants on June 25, 2020. JA64, JA276. Defendants provided no explanation as to why the chart indicates a declined patient visit after Tartaro-McGowan was no longer employed.

Furthermore, Tartaro-McGowan did not refuse to perform the assigned field visit, but rather, the assigned patient requested that the visit be rescheduled. After inputting this information in the system as required. Despite her inability to perform the assigned field visit, Defendants terminated her anyway.

After Tartaro-McGowan filed suit and Defendant discovered that the patient had rescheduled the visit at no fault of Tartaro-McGowan, Defendants changed their justification from her alleged refusal to perform the assigned field visit, to the much broader failure to perform **any** field visit. This altered justification

43

significantly broadened the requirements and moved the target to which Tartaro-McGowan sought to comply.

The proffered reason is further contradicted by Nesterick's testimony that Defendants terminated Tartaro-McGowan not because she declined to see a patient, but because she had cleared out her office.[4] JA475 ("This communication confirms that you did not make any field visits on Wednesday June 24th as requested, and also had cleared out your office as of Tuesday, June 23."). In certain communications, she referenced both explanations. JA803.

A reasonable jury could find that Defendants' inability to articulate a consistent reason for terminating Tartaro-McGowan showed that their later justifications were pretext for discrimination and retaliation. Accordingly, the district court's order must be reversed, and the case remanded for further proceedings.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, this Court should reverse the district court's grant of summary judgment for Defendants and remand the case for a jury trial.

---

[4] Tartaro-McGowan denies that she "cleared out" her office and instead maintains that she removed dying plants and supplies to allow her to work remotely. To this day Tartaro-McGowan still has personal effects that are in the possession of Defendants.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Fourth Circuit Rule 34(a), Appellee respectfully submits that oral argument will assist the Court in resolving this appeal. This appeal presents important questions of law and fact. Oral argument would allow the Court to clarify its understanding of the facts and explore the appellee's contentions in greater detail.

Dated: October 18, 2022

Respectfully submitted,
/s/Timothy M. Belknap
Timothy M. Belknap
Tamara L. Slater
Alan Lescht & Associates, PC
1825 K Street NW, Suite 750
Washington, DC 20006
Tel. (202) 539-9308
Fax. (202) 463-6067
timothy.belknap@leschtlaw.com
tamara.slater@leschtlaw.com
*Attorneys for Appellant*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief uses a proportional font and contains 9,758 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

/s/ Timothy M. Belknap
Timothy M. Belknap

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2022 I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Fourth Circuit by using the appellate CM/ECF system. Participants in the case

who are registered CM/ECF users will be served by the appellate CM/ECF

system.

/s/Timothy M. Belknap
Timothy M. Belknap
