Appeal No. 22-1825

1:21-cv-00298

—————————————————————————

IN THE

United States Court of Appeals

FOR THE FOURTH CIRCUIT

Laura Tartaro-McGowan,

*Plaintiff-Appellant,*

---v.---

Inova Home Health, LLC and Alternate Solutions Health Network, LLC

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

Timothy M. Belknap
Tamara L. Slater
Alan Lescht & Associates, PC
1825 K Street NW, Suite 750
Washington, DC 20006
Tel. (202) 539-9308
Fax. (202) 463-6067
timothy.belknap@leschtlaw.com
tamara.slater@leschtlaw.com
*Attorneys for Appellant*

—————————————————————————

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ............................................................................ ii

ARGUMENT ....................................................................................................3

    A. Tartaro-McGowan was qualified for her job, as evidenced by nearly two years of successful performance and Defendants' own documentation and testimony..........3

    B. Defendants' standard policies did not obviate Tartaro-McGowan's need for reasonable accommodations. ...............................................................7

    C. Defendants terminated Tartaro-McGowan's employment......................................11

    D. Explicit discriminatory remarks are not required to establish causation. ...............13

    E. Defendants' admission that the accommodation request was a factor in the termination and their shifting and inconsistent explanations about staffing support an inference of pretext. ...............................................................14

CONCLUSION ..............................................................................................16

CERTIFICATE OF SERVICE ...................................................................19

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Elledge v. Lowe's Home Centers, LLC*,
   979 F.3d 1004 (4th Cir. 2020) ..................................................................4, 5

*Hartsell v. Duplex Prod., Inc.*,
   123 F.3d 766 (4th Cir. 1997) ...........................................................................13

*Laughlin v. Metro. Wash. Airports Auth.*,
   149 F.3d 253 (4th Cir. 1998) ...........................................................................13

*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) .............................13

*Reyazuddin v. Montgomery County, MD*,
   789 F.3d 407 (4th Cir. 2015) .............................................................................8

*Rowe v. Marley Co.*,
   233 F.3d 825 (4th Cir. 2000) ...........................................................................13

*Slaby v. Holder*,
   No. 112CV1235AJTIDD, 2013 WL 12147698 (E.D. Va. July 24, 2013) ....................10

*Williamson v. Bon Secours Richmond Health System, Inc.*,
   34 F.Supp.3d 607 (July 28, 2014) .....................................................................9

**STATUTES**

42 U.S.C. § 12111(9) ............................................................................................8

**OTHER AUTHORITIES**

Technical Assistance Manual: Title I of the ADA, Section 3.6
   (http://askjan.org/links/ADAtaml.html# III......................................................9

## **ARGUMENT**

The district court erred by entering summary judgment. The record evidence is more than sufficient to enable a reasonable jury to conclude that: (1) Plaintiff-Appellant Laura Tartaro-McGowan could perform the essential functions of her job with or without accommodations; Tartaro-McGowan was qualified for the Clinical Manager position; (3) Defendants failed to engage in an interactive process or provide reasonable accommodations; and (4) Defendants' purported reason for firing Tartaro-McGowan is false and pretextual. Defendants' arguments to the contrary are unavailing for the following reasons:

A. **Tartaro-McGowan was qualified for her job, as evidenced by nearly two years of successful performance and Defendants' own documentation and testimony.**

Defendants contend that Tartaro-McGowan was unqualified because (1) she did not meet the physical requirements of bending, lifting, and stooping, and (2) she could not perform the essential job duty of direct care field visits. Both contentions are false. The Clinical Manager job description lists the following physical requirements:

- Bending (occasionally 2%-33% of the time);

- Lifting up to 50 lbs. with or without assistance (occasionally 2%-33% of the time); and

- Stooping (bend at waist) (occasionally 2%-33% of the time).

JA317.  Defendants claim that Tartaro-McGowan admitted she did not meet these requirements as written.  Regardless of whether Tartaro-McGowan could bend or lift 50 pounds or stoop "2%-33% of the time" —whatever that means— it is undisputed that she successfully performed all of her job duties, without accommodations, for nearly two years.  *See, e.g.,* Nesterick Email, JA784; Performance Appraisal, JA760-766; Declaration of Laura E. Tartaro-McGowan, JA768.  In fact, Defendants did not claim Tartaro-McGowan was unqualified until she requested reasonable accommodations.  Tartaro-McGowan's successful performance is evidence that the bending, lifting, and stooping requirements set forth in the job description are not actual or legitimate requirements for the Clinical Manager position.

Further, Defendants' reliance on *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1010 (4th Cir. 2020), is misplaced, as the facts in *Elledge* are distinguishable and do not support Defendants' argument.  In *Elledge*, the plaintiff's job description stated that workers must "be able to lift loads weighing between 50 and 100 pounds."  *Elledge*, 979 F.3d at 1010.  While the plaintiff was able to lift 75 pounds, he could not lift 100 pounds.  *Id.*  The plaintiff argued that he met the requirement because he was able to lift within the specified range.  *Id.* This Court disagreed because the job description specified that the plaintiff needed to be able to lift a 100-pound box.  *Id.*

By contrast, Tartaro-McGowan's job description includes only vague, ambiguous percentage ranges for each physical activity. For example, the Clinical Manager job description noted a need to walk, bend and stand "occasionally," which is defined as "2%-33%." Clinical Manager Job Description, JA725-727. This percentage range lacks the objectivity of the requirement at issue in *Elledge*. Defendants failed to explain what the percentage ranges mean or otherwise clarify how much and often a Clinical Manager needed to bend, lift, or stoop. Tartaro-McGowan Deposition, JA223-225. Furthermore, before accepting the job, Tartaro-McGowan discussed her concerns about the physical requirements with Humphrey and Ellis, who assured her: "Don't worry. These [duties] are supervisory in nature." Tartaro-McGowan Deposition, JA161-163.[1]

Similarly, Defendants' contention that Tartaro-McGowan was unqualified because she could not perform direct patient care field visits is wrong. Contrary to what Defendants contend, the Clinical Manager job description proves just the opposite. The job description, which Defendants drafted, specifically identifies the Clinical Manager's seven essential functions (under the heading "Essential

---

[1] This is consistent with the experience of all other internal staff who, despite Defendants' suggestion that such visits were performed rarely, in fact **never** performed direct patient care field visits before May 2020, or after August 2020. JA161-163, JA124, JA142-144, JA435, JA566, JA742-758 (showing direct patient field visits only between May and August 2020).

Functions," no less), and conducting direct patient care field visits is not one of them.  This is the closest the job description get: "Arrives at assigned location on scheduled work day.  Works according to designated hours and on-call *as needed* in office and *field nursing responsibilities*."  JA725-727 (emphasis added).  There is evidence in the record that supports an inference that the essential "field nursing responsibilities" required of the Clinical Manager were supervisory in nature where a non-supervisory nurse was always responsible for direct patient care.  JA162-163 (was told that nursing responsibilities were supervisory in nature), JA124 (only performed supervisory field visits before the pandemic), JA142-144 (explaining supervisory field visits), JA435 (Nesterick only performed supervisory field visits as a clinical manager), JA566-567 (showing that Vasquez understood that Clinical Managers only performed supervisory field visits, based on the job description and pre-hire conversations with Defendants hiring authority, when she accepted the job); JA722 (noting that Clinical Managers only performed supervisory visits).

The job description's only reference to providing direct patient care is under the heading "Major Area of Responsibility" (*i.e.,* a separate section from "Essential Functions"): "Completes field visits as needed providing direct patient care upon Administrator discretion." JA725-727.  Defendants wrote the job description and could have listed direct patient care visits as an essential function, but they did not

6

do so.  A jury could view the omission as an admission.  Moreover, the record raises an inference that supervisory nurses performed direct patient care visits only between May and August 2020 (*i.e.,* at the height of the COVID-19 pandemic). JA161-163, JA124, JA142-144, JA435, JA566, JA742-758 (showing direct patient field visits only between May and August 2020).  The timing indicates that performing direct patient care visits was, at best, a marginal and temporary duty for supervisory nurses performed during a four-month period.

In sum, based on the job description, testimony and other evidence regarding physical requirements and field visits, Tartaro-McGowan's successful performance, and the timing, a reasonable jury could find that Tartaro-McGowan met physical requirements, that direct care field visits were not an essential job function, and that she was otherwise qualified for her job.

B.  **Defendants' standard policies did not obviate Tartaro-McGowan's need for reasonable accommodations.**

Defendants claim that Tartaro-McGowan did not need reasonable accommodations to perform direct patient care field visits because their standard policies provided adequate safeguards.  Specifically, Defendants contend that pre-screening visits and limiting the number of visits per day effectively resolved Tartaro-McGowan's physical limitations.  However, Tartaro-McGowan's medical evidence raises an issue of material fact as to whether Defendants' standard policies adequately addressed her disability.  *See Reyazuddin v. Montgomery*

7

*County, MD*, 789 F.3d 407, 415-16 (4th Cir. 2015) (*citing* 42 U.S.C. § 12111(9)) (noting that job restructuring can be an appropriate accommodation).

On May 13, 2020, and on May 30, 2020, Tartaro-McGowan provided Defendants' two notes from her physician, Dr. Gavora, advising that pre-screening visits and limited number of visits did **not** adequately accommodate Tartaro-McGowan. Doctor's letters, JA717-718; Humphreys Deposition, JA398-399 ("expect the unexpected"); JA341-342 (explaining that advance patient screening did not accommodate Ms. Tartaro-McGowan because "[e]ven if her initial screening would suggest that a patient could be cared for without these requirements, that can never be truly determined until she is at the home doing a proper nursing assessment. Once in the home, she would have a professional obligation to address the patient's needs and she may not be able to do that adequately because of her arthritic issues."), 722-723 (describing why screening would be ineffective).

Joan VanZant, Director of Human Resources, testified that she relied on Kathleen Nesterick, Field Administrator, to determine what accommodation was reasonable, as VanZant had no personal experience performing any type of field visits. VanZant Deposition, JA499-501. Nesterick admitted that she had limited

8

direct patient care experience[2] and, in fact, that Tartaro-McGowan had more experience performing field visits than she, VanZant, and Hindle.  On a number of occasions, Nesterick said that Tartaro-McGowan's expertise is what made Defendants' existing policies viable.  Nesterick Email, JA784. ("Your 17+ years of field experience gives you an additional advantage of knowing how to properly screen patients.").  In other words, Defendants admitted that Tartaro-McGowan was more qualified than they were to determine whether her requested accommodation would be reasonable given her physical limitations.

Nonetheless, Defendants denied Tartaro-McGowan accommodations without requesting additional medical documentation or engaging in an interactive process.  JA448-449, 514-515; *Williamson v. Bon Secours Richmond Health System, Inc.*, 34 F.Supp.3d 607, 613 (July 28, 2014) (*citing* Technical Assistance Manual: Title I of the ADA, Section 3.6 (http://askjan.org/links/ADAtaml.html# III).  Nesterick testified that she considered Tartaro-McGowan to be physically capable to perform field visits without accommodations despite her doctor's opinion because:

> [Tartaro-McGowan] comes to work, she sits at her desk, she gets up, she gets down, she walks to the bathroom. She's able to get around in the office without any difficulty. So walking to a patient's hom[e],

---

[2]  The record reflects that VanZant made exactly one such visit. JA434 ("I did one visit.").

9

going up or down a step or two should not provide any issue.

JA447-449; *Slaby v. Holder*, No. 112CV1235AJTIDD, 2013 WL 12147698, at *2

(E.D. Va. July 24, 2013) (conclusion regarding reasonable accommodation drawn

by doctor without demonstrated expertise in the field was "entirely speculative and

not based on any expertise").

Defendants' corollary argument, that Tartaro-McGowan's personal life

activities suggest she violated her own restrictions, is similarly unavailing.

Defendants paint a flattering picture of Tartaro-McGowan singlehandedly taking

care of her family, performing all household chores, providing constant medical

care to her husband, and traversing some palatial space each day  Defendants

conveniently omit Tartaro-McGowan's adjacent testimony that she had assistance

nearby at all times when engaged in her personal life activities and that she did not

provide medical care to her husband as Defendants contend.[3]  Tartaro-McGowan

Deposition, JA110 (always attended games with another person, most often with a

friend who was a physical therapist); *Id.*, JA112-113 (adult children live next door

and assist when needed).  Tartaro-McGowan also testified that the facilities she

frequented, including her home and Nationals Park, were ADA compliant and

---

[3]  Tartaro-McGowan is a caregiver only in the normal sense of one spouse caring for
the other.  Tartaro-McGowan's husband is not bedridden and does not require
medical attention from her. JA299-301 (husband does not require nursing care).

provided adequate reasonable accommodations, including elevators, escalators, handrails, and handicap seating. *Id.*, JA109-110. Finally, she testified that she split household duties with her husband and received assistance from family members and friends when needed. *Id.*, JA112-113.

Tartaro-McGowan was able to do all this because she was aware of her surroundings, that those surroundings could support her needs, and that she always had assistance nearby if something went wrong. It was that kind of reassurance she sought from Defendants, and when they refused to provide it, she had no choice but to avoid non-essential duties.[4] Thus, a reasonable jury could find that Defendants policies did not effectively accommodate Tartaro-McGowan's physical restrictions. Based on Tartaro-McGowan's two doctor's notes, Defendants' unexplained rejection of those notes and refusal to seek clarification of the same, a jury could reasonably conclude that Defendants' policies were inadequate and that their refusal to engage in an interactive process to identify accommodations constitutes a failure to provide a reasonable accommodation.

C.   **Defendants terminated Tartaro-McGowan's employment.**

Defendants deny that they terminated Tartaro-McGowan's employment and claim that she abandoned her position. This argument is false and disingenuous.

---

[4] While it is true that Tartaro-McGowan did not propose any accommodation other than not performing non-essential functions, the same is true of Defendants, who refused to alter their standard policies to accommodate Tartaro-McGowan.

11

On June 25, 2020, Defendants notified Tartaro-McGowan of the termination of her employment, effective June 24, 2020.  Leading up to the termination, Defendants notified Tartaro-McGowan in writing on at least three occasions that her employment would end if she did not perform direct patient care field visits. JA824, 782, 797.  In the final communication on June 22, 2020, Nesterick wrote:

> I do need to inform you that this is your final warning. I expect that you will be available to see patients in the field beginning Wednesday June 24th. If you decide not go [sic] into the field, then this will be considered job abandonment, and **you will no longer be employed by Inova Home Health effective June 24th.**

JA794 (emphasis added).  It is reasonable to infer from these communications that it was Defendants' decision, and not Tartaro-McGowan's, to terminate her employment.

As evidence of job abandonment, Defendants misrepresent Tartaro-McGowan's testimony, claiming she admitted clearing out her office before June 24, 2020.  In fact, Tartaro-McGowan stated that she removed dying plants and enough supplies to continue working remotely.  JA282-284, 686.  She also testified that she left behind personal effects that she has been unable to retrieve from Defendants after her termination.  Similarly, Tartaro-McGowan did not return her equipment until June 26, 2020 (JA829, List of Equipment Returned), and she waited until July 1, 2020, to say goodbye to colleagues (Email from Laura Tartaro-McGowan, JA831-832).  Moreover, Tartaro-McGowan reported to work on June

12

24, 2020, and June 25, 2020, as she had not yet received notice of her termination
from Defendants.  JA801-803 (Termination Emails).

Accordingly, a reasonable jury could find that Defendants involuntarily
terminated Tartaro-McGowan's employment and that her separation was otherwise
an adverse employment action. *See Laughlin v. Metro. Wash. Airports Auth.*, 149
F.3d 253, 258 (4th Cir. 1998) (*citing Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766,
775 (4th Cir. 1997)).

**D.** **Explicit discriminatory remarks are not required to establish causation.**

Contrary to what Defendants suggest, evidence that managers made explicit
discriminatory or retaliatory remarks is not required to establish a causal nexus.
*See Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (holding that generally,
"courts may not require a plaintiff who proves both a prima facie case and pretext
to produce additional proof of discrimination in order to survive a defendant's
motion for summary judgment. This is so because "it is permissible for the trier of
fact to infer the ultimate fact of discrimination from the falsity of the employer's
explanation.") (*quoting Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133,
147, 120 S. Ct. 2097, 2108, 147 L. Ed. 2d 105 (2000).  Here, there is evidence of
pretext as well as close temporal proximity; Defendants terminated Tartaro-
McGowan's employment less than a month after she requested reasonable
accommodations.  Additionally, Defendants never accused Tartaro-McGowan of

failing to meet physical requirements until she disclosed her disability and requested accommodations.  Nesterick admitted that Tartaro-McGowan's disability and need for accommodations drove the decision to terminate her employment. Further, Tartaro-McGowan presented evidence that there were other nurses who failed to perform field visits but were not fired.  Of course, those nurses did not have disabilities or request accommodations.

E.   **Defendants' admission that the accommodation request was a factor in the termination and their shifting and inconsistent explanations about staffing support an inference of pretext.**

Defendants claim that they terminated Tartaro-McGowan's employment because they desperately needed staff to perform field visits and she failed to conduct any field visits before June 24, 2020.  Tartaro-McGowan presented evidence that Defendants did not have dire staffing needs.  In fact, there were nurses who were available and requesting to conduct the field visits, but Defendants declined their requests. JA266-267 (noting that three remote, internal registered nurses, Ugo Agwi, Christine Nembatu, and Clarice Pollard, were not asked to go into the field); JA811-813 (June 22, 2020 email from Agwu to Nesterick requesting to go into the field). Tartaro-McGowan also presented evidence that Defendants did not fire nurses who did not perform field visits and did not have disabilities or request accommodations. JA742-758 (list of direct patient care field visits showing Sarah McClain and Tiffani White had not

performed field visit before June 24, 2020), JA589-590 (testimony from Virginia Vasquez, Director of Nursing, noting that Sarah McClain had not performed field visits before June 24, 2020), JA459-460 (testimony from Nesterick confirming that neither McClain nor White had performed field visits before June 24, 2020). This evidence establishes a disputed material fact as to Defendants' purported reasons for firing Tartaro-McGowan.

Tartaro-McGowan also presented admissible evidence that Defendants' purported reason for terminating her employment is false. First, Defendants treated Tartaro-McGowan less favorably than nurses who also failed to conduct field visits by June 24, 2020, but did not have disabilities or request reasonable accommodations. JA742-758, JA589-590, JA459-460. In response, Defendants contend that some of these nurses are not true comparators because they were remote employees. In the same breath, Defendants use these same remote nurses as comparators for purposes of proving staffing issues; they contend that their staffing needs were so dire that they activated staff from Dayton, Ohio, to travel to Virginia to assist with the field visits. Not only is Defendants' argument hypocritical, it is also contradictory, considering Defendants' unexplained decision not to activate other nurses to conduct field visits based on potential distance issues. Tartaro-McGowan presented evidence that there were other nurses who were able and willing to travel to conduct the field visits and were closer to

15

Virginia. JA811-813. But Defendants declined to activate these nurses, despite supposedly dire staffing needs that necessitated deployment of nurses in Ohio. JA460-463 (Nesterick confirming that remote nurses were not requested to assist). Defendants' inconsistent statements and actions regarding these staffing issues, contradict its alleged non-discriminatory reason for terminating Tartaro-McGowan.

Moreover, Nesterick admitted that she decided to terminate Tartaro-McGowan's employment because of her accommodation request. JA459-461 (Nesterick focused on Tartaro-McGowan, as opposed to others, because she had requested a reasonable accommodation to avoid direct patient care field visits). In sum, the record evidence is sufficient to raise a question of material fact regarding whether Defendants terminated Tartaro-McGowan's employment because they needed nurses to conduct field visits or because they did not want an employee with a disability who needed reasonable accommodations.

## **CONCLUSION**

For all of the foregoing reasons, as well as those set forth in the Opening Brief, this Court should reverse the district court's grant of summary judgment for Defendants and remand the case for a jury trial.

Dated: December 7, 2022                    Respectfully submitted,

                                                    /s/Timothy M. Belknap

Timothy M. Belknap
Tamara L. Slater
ALAN LESCHT AND ASSOCIATES, P.C.
1825 K Street, NW, Suite 750
Washington, DC 20006
Tel. (202) 539-9308
Fax. (202) 463-6067
timothy.belknap@leschtlaw.com
tamara.slater@leschtlaw.com

*Attorneys for Appellant*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief uses a proportional font and contains 2,964 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).


　/s/ Timothy M. Belknap　　　
Timothy M. Belknap

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2022, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Fourth Circuit by using the appellate CM/ECF system. Participants in the case

who are registered CM/ECF users will be served by the appellate CM/ECF system.


   /s/ Timothy M. Belknap

Timothy M. Belknap